IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEE STEWART, | ) | Civil Action No. 3:13-cv-00246 |
| | ) | |
| Plaintiff, | ) | |
| | ) | United States District Judge |
| v. | ) | Kim R. Gibson |
| | ) | |
| PA DEPT. OF CORRECTIONS, et al., | ) | United States Magistrate Judge |
| Defendants. | ) | Cynthia Reed Eddy |

**REPORT AND RECOMMENDATION**

**I.  Recommendation**

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss filed by the DOC Defendants (ECF No. 38) be granted in part and denied in part; that the Motion to Dismiss filed by Corizon Health Care, Inc., Mandy Corman, and Maria Leahy (ECF No. 40) be granted in part and denied in part; and that the Motion to Dismiss filed by Defendants Muhammad Naji, M.D., and Maria Leahy, P.A. (ECF No. 42) be denied. It is further recommended that Plaintiff not be provided leave to amend as it would be futile.

**II.  Report**

**A.  Relevant and Material Facts**

The following allegations are summarized from the Amended Complaint, and must be taken as true in deciding these Motions to Dismiss. *See Newman v. Beard,* 617 F.3d 775, 779 (3d Cir. 2010). The Amended Complaint recounts in great detail the factual background surrounding Plaintiff's claims.

Plaintiff Lee Stewart, is an inmate who is currently, and at the times relevant to this lawsuit, confined in the custody of the Pennsylvania Department of Corrections ("DOC") in the State Correctional Institution ("SCI") at Houtzdale. Plaintiff filed his original Complaint on

1

November 14, 2013. Subsequent to the filing of motions to dismiss, Plaintiff filed a First Amended Complaint on May 12, 2014 (ECF No. 37), which remains the operative complaint.

His basic claim is that he received inadequate medical care and was denied certain medical treatment in violation of his constitutional rights. Named as defendants are: Superintendent Steven Glunt, Corrections Healthcare Administrator Debra Younkin, and Nurse Marvin Branto, collectively referred to herein as "DOC Defendants;"[1] Rich Hallsworth, the CEO of Corizon Health Care, Inc., upon whom service has not been attempted, Corizon Health Care, Inc., Mandy Corman and Maria Leahy, collectively referred to as the "Medical Defendants;" and Muhammad Naji, M.D., and Maria Leahy, P.A., and John Doe, a Physician Assistant, who remains unidentified and unserved. All defendants are sued in their official and individual capacities. (Amended Complaint at p. 7.)

This case stems from injuries Plaintiff sustained to his left foot on July 10, 2012, while playing basketball. Plaintiff was seen the next day in the "facility medical department as an emergency due to the injury and the associated high level of pain he was in." Amended Complaint at ¶ 14 (ECF No. 37). He was examined by Defendant Nurse Marvin Branto, who diagnosed Plaintiff as having a sprain and provided him with an ice pack, a wrap, and crutches. No x-rays were taken at that time.

The following day, July 12, 2012, Plaintiff returned to the Medical Department and x-rays were taken. He was examined by Defendants Mandy Corman and Maria Leahy, both

---

[1] In the original Complaint, Plaintiff named the Department of Corrections as a defendant. However, Plaintiff did not name the Department of Corrections in his Amended Complaint. The DOC Defendants request that this Defendant be dismissed from the action and terminated from the docket. As there is no objection from Plaintiff on this issue, Defendants' request is granted and the Department of Corrections will be terminated from this action.

2

Physicians Assistants, who determined, after an x-ray analysis, that Plaintiff had sustained a sprain to his left ankle. Plaintiff was told that he needed to turn in his crutches by July 18, 2012.

On July 13, 2012, Plaintiff submitted a request to be seen by the Medical Department because "his foot looked worse" and he was continuing to experiencing a high degree of pain. *Id.* at ¶ 17. Plaintiff was not seen by the Medical Department until five (5) days later, on July 18, 2012, at which time he was examined by an unnamed Physician Assistant, who allegedly told Plaintiff that he was required to turn in his crutches.[2] Plaintiff's left foot was swollen and his "left foot and ankle was black and blue." He informed PA John Doe that he remained in pain. Plaintiff allegedly was told that there was nothing wrong with his foot and that "you guys need to toughen up." *Id.* at ¶ 18.

The next day, on July 19, 2012, Plaintiff returned to the Medical Department for a second x-ray of his foot. At that time, he was advised that his "foot was in fact broken, that [he] suffered a Fifth Metatarsal Fracture." He was then put in a short leg cast, re-issued crutches, and provided Tylenol for pain. *Id*. at ¶ 19.

Sometime thereafter, Plaintiff requested to see the Medical Department due to "continued pain and a smell emanating from plaintiff's cast." *Id*. at 20. He was seen by the Medical Department on August 28, 2012, at which time his cast was removed and it was discovered that he had developed an infection on the top of his left foot.

Plaintiff continued to experience pain in his left foot. On September 14, 2012, Plaintiff was again seen in the Medical Department by Defendant PA Corman who agreed that some ligament damage to Plaintiff's foot / ankle could be present. She told Plaintiff that she would talk to Dr. Naji about the situation. Defendant PA Corman issued Plaintiff a brace to be worn for

---

[2] It is unclear from the Amended Complaint whether Plaintiff was also seen on July 18, 2012, by Defendant Nurse Branto. *See* Amended Complaint at ¶ 18.

90 days. After the expiration of the 90 days, Defendant PA Leahy took the brace "saying Plaintiff didn't need it." *Id.* at ¶ 30.

On February 28, 2013, Plaintiff was again seen in the Medical Department and it was "to some degree confirmed that some damage was in the left ankle." *Id*. at ¶ 23. On May 14, 2013, Dr. Naji approved a lace-up brace for Plaintiff.[3] On March 20, 2014, Plaintiff returned to the Medical Department, "explained his situation to the PA," who "simply put on a glove felt plaintiff's foot, and ordered plaintiff 500 mg. of Naproxen, due to plaintiffs pain." *Id.*

Throughout the Amended Complaint, Plaintiff consistently alleges that he has been in constant pain for his leg / foot and that he has been to the Medical Department complaining of pain on numerous occasions through the year 2013 and as recently as March 20, 2014. Plaintiff contends that Defendants were deliberately indifferent to his serious medical needs in a myriad of ways, *inter alia*, he was forced to walk on his "broken/fractured foot/ankle" for at least eight to nine days; he was denied medical materials to protect his foot, which caused his foot to become infected; no treatment or diagnosis has been made to determine the reason or cause for his continued pain; no steps have been taken to alleviate his ongoing pain; the actions of Defendants have aggravated Plaintiff's condition; and the decisions of the Defendants to delay medical treatment are based on non-medical factors, such as "cutting cost." As relief, Plaintiff seeks "$50,000 each defendant, $250,000.00 for defendants jointly and severally," projected cost of future medical needs, and fees and cost. *Id.* at page 7.

Defendants have each filed a Motion to Dismiss, with brief in support, pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Amended Complaint should be

---

[3] The Amended Complaint also states that Plaintiff saw Dr. Gene Zappa, who ordered a lace-up brace, but that Plaintiff never received this brace. The Amended Complaint does not indicate the date on which Plaintiff saw Dr. Zappa.

4

dismissed for failure to state a claim because there are insufficient allegations of deliberate indifference to support § 1983 liability. The matter has been fully briefed and is ripe for disposition. (See ECF Nos. 38, 39, 40, 41, 42, 43, 45, 46, 47, 49, and 50.)

### B. Standard Of Review For Motions to Dismiss

#### 1. *Pro Se Litigants*

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)). *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.

1990) (same).  Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002).

2.  *Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard*

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiently of the complaint.  When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff.  *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010)).  However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly,* such "[f]actual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. 554, 555 (2007).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must conduct a three-step analysis when considering a motion to dismiss for failure to state a claim.  *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675).  First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original).  Second, the court

"should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).

C. **Discussion and Analysis**

1. <u>*Eighth Amendment Deliberate Indifference Claims*</u>

In accordance with the Eighth Amendment's prohibition against cruel and unusual punishment, the government is obliged "to provide medical care for those whom it is punishing

7

by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Id*. at 104 (citation omitted). "[W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed . . . deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id*. at 104–05 (citations omitted).

A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id*. The "deliberate indifference" a plaintiff must allege lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other" and is frequently equated with recklessness as that term is defined in criminal law. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). This standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979). Where a prisoner has received medical care and only the adequacy of the treatment is disputed, courts are often reluctant to second guess professional medical judgment. *See id.*

However, deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. *See Durmer,*

991 F.2d at 64; *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").

The Court will assume, solely for purposes of this Report and Recommendation, that Plaintiff has a serious medical need. It is well established that an inmate does not have a constitutional right to see a doctor on demand or the doctor of his choice. Nor is an inmate entitled to a particular course of treatment or to have particular tests performed. *Jetter v. Beard,* 130 F. App'x 523, 526 (3d Cir. 2005), *cert. denied,* 546 U.S. 985 (noting that while plaintiff would have preferred a different course of treatment, his preference does not establish an Eighth Amendment cause of action). Moreover, the United States Court of Appeals for the Third Circuit has held that, under the deliberate indifference standard, prison medical authorities have "considerable latitude" in exercising judgment in the diagnosis and treatment of inmate patients and courts should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment which remains a question of sound professional judgment." *Carter v. Smith*, 2012 WL 1864006 at *1 (3d Cir. May 23, 2012) (*quoting Pierce*, 612 F.2d at 762).

Application of the principles discussed above leads to different results for different groups of the defendants. The Court will therefore discuss application of the legal principles for each of these groups.

    a. <u>The Medical Staff - Defendants Dr. Naji, PA Corman, PA Leahy, and Nurse Branto</u>

Defendants argue that Plaintiff's deliberate indifference claim against them should be dismissed because the allegations in the Amended Complaint amount to a disagreement with the type of medical care and not a refusal to provide care. The Court disagrees. Construing his pro se complaint liberally, the allegations in the Amended Complaint meet both the objective and subjective prongs of a deliberate indifference claim. It is not beyond doubt that Plaintiff could

9

prove some set of facts that would entitle him to relief with respect to various medical staff who have moved for dismissal.

Dr. Naji was made aware of the Plaintiff's medical history and knew of Plaintiff's continued complaints of pain. Dr. Naji's decision to treat Plaintiff only with a foot brace and Tylenol and not refer him for an MRI could be interpreted as persisting in a particular course of treatment in the face of continued pain and risk of permanent injury to Plaintiff.

Plaintiff also makes sufficient allegations to state claims against defendants PA Corman, PA Leahy, and Nurse Branto. Plaintiff complained to these Defendants on multiple occasions of his persistent pain. It is possible that Plaintiff's requests were reasonable and denying him the treatment he sought caused him undue suffering. It is also possible that, as Plaintiff suggests, the Medical Staff Defendants were delaying further treatment or different types of treatment for non-medical reasons.

The Court recommends that the motions to dismiss as to these defendants be denied. While a close case, the Court finds that, in light of Plaintiff's pro se status and, giving him the benefit of all reasonable inferences, the Amended Complaint adequately makes sufficient allegations that these Defendants may have deliberately denied or delayed medical treatment to Plaintiff.

The Court recognizes that discovery may well reveal that the alleged conduct of these Defendants does not give rise to a deliberate indifference claim, but at this early stage of the litigation, the allegations of the Amended Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor.

The Court notes that Defendants PA Corman and PA Leahy also argue that the claims against them should be dismissed as they were not acting under color of state law because they

"were independent medical providers working through Corizon Health, Inc." Defs' Br. at 5 (ECF No. 41). This argument can be rejected rather summarily. It is well established that a private entity which contracts with the state to perform a "traditional state function" such as providing medical services to prison inmates may be sued under § 1983 as one acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 54 (1988). Both Defendants PA Corman and PA Leahy were apparently employed or under contract with Corizon Health Care, Inc., the corporate prison health care provider for DOC inmates. Accordingly, Defendants PA Corman and PA Leahy are considered "state actors" because their "employer," Corizon Health Care, Inc., acted under the authority of the State for § 1983 purposes. *See Rosborough v. Management & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) (employees of private prison-management corporations may be sued under § 1983).

b. Defendant Debra Younkin

Plaintiff alleges that Defendant Debra Younkin, the Health Care Administrator at SCI–Houtzdale, interfered with his ability to get medical care. Plaintiff alleges that he informed her of his constant pain and requested to have an MRI, a request she denied.

In the context of medical care claims, "[c]orrectional defendant - administrators who are not themselves physicians cannot 'be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Davis v. Thomas*, 558 F. App'x 150, 155 (3d Cir.) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)) *cert. denied*, --U.S. --, 2014 WL 3841942 (2014). As explained by our court of appeals, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Id*. (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). "If the non-medical

prison official has no actual knowledge that prison doctors are mistreating a prisoner, he or she "will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id. See also Rodriguez v. Sec'y Pa. Dep't Corr.,* 441 F. App'x 919, 923 (3d Cir. 2011) (finding that the defendants' decisions and responses to a prisoner's complaints were based upon medical records and did not constitute deliberate indifference); *see also, Durmer,* 991 F.2d at 69 (where a plaintiff was receiving care from prison doctor, no deliberate indifference existed simply because of the plaintiff's disagreements or medical complaints with his care and the defendant's failure to respond directly to them).

Applying these principles, the Court finds that Defendant Younkin simply declined to favorably act upon Plaintiff's request for an MRI, which would have prescribed a way for the Medical Staff to deal with Plaintiff's medical issues. Correctional staff can, and should, defer to the judgment of medical professionals on medical matters. When they do so, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d. Cir. 2004).

On the factual allegations contained in the Amended Complaint, the Court cannot say that the actions of Defendant Younkin constituted deliberate indifference to Plaintiff's medical needs. Accordingly, the Court recommends that the motion to dismiss Defendant Younkin be granted.

    c.    <u>Defendant Superintendent Glunt</u>

Plaintiff alleges that "Defendant Glunt was also notified personally by plaintiff regarding his situation and through the grievance process was also notified of Plaintiff's ongoing pain and suffering." Amended Complaint at p. 8. The Court finds that there are no allegations against

Defendant Glunt that would support a finding that he was deliberately indifferent. Indeed, there are no allegations that Defendant Glunt was personally involved in the denial or inadequacy of the plaintiff's medical care.[4] In response to the motions to dismiss, Plaintiff argues that he is not proceeding against Defendant Glunt on a theory of respondent superior, but rather on a theory of supervisory liability.

In *Barkes v. First Correctional Medical, Inc.,* 12–3074, 766 F.3d 307, 2014 WL 4401051 (3d Cir. Sept. 5, 2014), the Court of Appeals for the Third Circuit recently clarified the standards for supervisory liability with regard to Eighth Amendment deprivation of care claims. The court of appeals held that the four-part test set out in *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989), continues to provide the best method for determining subjective deliberate indifference on the part of a supervisor in such cases. As the court summarized:

> The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Barkes,* 766 F.3d 307, 2014 WL 4401051 at *7. Here, the Amended Complaint fails to meet the initial requirement of *Sample* because it does not identify a supervisory policy or practice that Defendant Glunt failed to employ. Further, the Amended Complaint contains no allegation suggesting that Defendant Glunt engaged in a policy or practice of intentionally failing to provide or delaying adequate medical care to inmates.

---

[4] To be liable under § 1983, "a defendant . . . must have personal involvement in the alleged wrongs." *Sutton v. Rasheed*, 323 F.3d 236, 249–50 (3d Cir. 2003). Liability does not attach in claims involving inadequate medical care on a theory of respondeat superior. *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1082 (3d Cir. 1976).

The Amended Complaint also, without support, states that Defendant Glunt was "personally notified" of Plaintiff's ongoing "situation." However, as with Defendant Younkin, Defendant Glunt is not a medical doctor and the allegations of the Amended Complaint do not reflect that Defendant Glunt had a reason to believe (or had actual knowledge) that prison doctors or their assistants were mistreating (or not treating) Plaintiff.

To the extent Plaintiff seeks to impose liability against Defendant Glunt based upon his involvement in Plaintiff's grievances, he fails to state a viable claim under § 1983. Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement for purposes of § 1983 liability. *Rode v. Dellarciprete,* 845 F.2d 1195, 1208 (3d Cir. 1988) (mere filing of a grievance is not enough to impute the actual knowledge necessary for personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); *Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability).

Accordingly, it is recommended that the motion to dismiss Defendant Glunt be granted.

    d.    <u>Defendant Corizon Health Care, Inc</u>.

Defendant Corizon Health Care, Inc., ("Corizon Health") is identified in the Amended Complaint as the "contracted health care provider for the Pennsylvania Dept. of Corrections." Amended Complaint at ¶ 5. For § 1983 purposes, Corizon Health "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." *Natale v. Camden County Corrections Facility,* 318 F.3d 575, 584 (3d Cir. 2003).

However, the United States Court of Appeals for the Third Circuit has held that a contracted health care provider, such as Corizon Health, could be held liable if the plaintiff shows that there was a relevant policy or custom, and that the policy or custom caused the constitutional violation plaintiff alleges.[5] Specifically,

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' "

*Natale*, 318 F.3d at 584 (footnote and citations omitted). The same standard applies to claims against a private corporation that is functioning as a "state actor." *See Weigher v. Prison Health Services*, 402 F. App'x 668, 669-70 (3d Cir. 2010).

Here, Plaintiff has alleged no facts suggesting that any decision to refuse or delay medical treatment to Plaintiff was the result of an actionable policy, practice, or custom of Corizon Health. Accordingly, it is recommended that Corizon Health be dismissed for failure to state a claim.

---

[5] In *Natale*, the plaintiff's claim arose under the Fourteenth Amendment, as he was detained pre-trial and Eighth Amendment protections only apply post-conviction. But our appellate court uses the same rubric to evaluate either claim, so the court's reasoning is equally applicable here. *See Natale*, 318 F.3d at 581 ("[W]e have found no reason to apply a different standard than that set forth in *Estelle* (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment.").

Plaintiff also attempts to set forth a claim against Rich Hallsworth, as the "CEO of Corizon Health Care, Inc." The only "allegation" asserted against Defendant Hallsworth is that he is purportedly the CEO of Corizon. *See* Amended Complaint at ¶ 4 and Additional Matter on p. 8.

The Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, §§ 801–810, 110 Stat. 1321–66 to 1321–77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* (28 U.S.C. § 1915(e)(2)) or seeks redress against a governmental employee or entity (28 U.S.C. § 1915A). The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §1915A because Plaintiff is a prisoner seeking redress from a governmental employee or entity.[6]

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A(b)(1) is identical to the legal standard used when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

The Amended Complaint is completely lacking in any arguable factual or legal foundation to show or suggest how Defendant Hallsworth allegedly violated Plaintiff's constitutional rights. The Amended Complaint, therefore, fails under *Twombly* to state sufficient facts to state a claim to relief against Defendant Hallsworth that is plausible on its face.

---

[6] 28 U.S.C. § 1915(e)(2) is not applicable because Plaintiff is not proceeding *in forma pauperis* in this litigation. *See* ECF No. 3 indicating that the filing fee, including the administrative fee, totaling $400, was paid on November 14, 2014.

Therefore, the Court recommends that any purported claims against Defendant Hallsworth be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

2. **Professional Liability Claims**

Defendants Dr. Naji, PA Corman, and PA Leahy argue that Plaintiff's Amended Complaint, fairly construed, also articulates a supplemental state law claim of professional medical negligence and, because Plaintiff has failed to comply with Pennsylvania Rule of Civil Procedure 1042.3 by filing a Certificate of Merit ("COM'), his state law claim should be dismissed.

Pennsylvania law requires that a COM accompany a claim for professional liability brought against designated licensed professionals, including health care providers. *See* Pa R. Civ. P. 1042.3 and 1042.1(b). The United States Court of Appeals for the Third Circuit has held that Rule 1042.3 is substantive law under the *Erie* doctrine and must be applied as such by federal courts. *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258 (3d Cir. 2011).

This requirement of state law applies with equal force to counseled complaints, and to pro se medical malpractice actions brought under state law. *See Leaphart v. Prison Health Services,* No. 3:10-cv-1019, 2010 WL 5391315 (M.D. Pa. Nov. 22, 2010). Accordingly, Plaintiff must comply with the COM requirements in order to proceed with his medical professional negligence claim against Defendants. A COM was required to be filed with the original complaint, or within sixty (60) days thereof, or on or about January 13, 2014.

In response to Defendants' motions to dismiss, Plaintiff requested an extension of time in which to file a Certificate of Merit, which, upon reflection, appears to have been improvidently denied by the Court as moot. *See* Text Order of July 23, 2014. Plaintiff renews that request in his Responses to the motions to dismiss. See ECF No. 46 and 50. While the case law on what

establishes "good cause" for granting a motion for extension of time for filing a certificate of merit is still evolving, good cause has been found under the following circumstances: (1) reasonable explanation or legitimate excuse; (2) the practicalities of securing expert review; and (3) the added burden of incarceration on the already difficult task of quickly finding and meeting with a suitable doctor. *See generally* Rule 1042.3(d) notes; *Booker v. United States*, 366 F. App'x 425 (3d Cir. 2010); *Womer v. Hilliker*, 908 A.2d 269 (Pa. 2006); *Fabian v. United States of America, Civ*. No. 13–1656, 2013 WL 5525647 (E.D.Pa. Oct.7, 2013).

Given Plaintiff's representation of limited prison law library access and the fact that his ability to secure expert review is compromised by his confinement, the Court shall, in accordance with Pa. R. C.P. 1042.3, extend the time for Plaintiff to file a certificate of merit for a period not to exceed sixty days. Accordingly, Plaintiff shall file a Certificate of Merit, on or about January 9, 2015.

**D.     Futility**

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.*

Given that the Court has already provided Plaintiff with an opportunity to amend, (see Order of March 4, 2014 (ECF No. 27)), the Court is not required to provide him with further leave to amend as further amendment would be futile. *Shelley v. Patrick,* 481 F. App'x 34, 36 (3d Cir. 2012). For the reasons discussed *supra*, it is recommended that Plaintiff not be granted leave to amend as it would be futile.

**III.     Conclusion**

For the reasons stated above, it is respectfully recommended that the Motion to Dismiss filed by the DOC Defendants (ECF No. 38) be granted in part and denied in part; that the Motion to Dismiss filed by Corizon Health Care, Inc., Mandy Corman, and Maria Leahy (ECF No. 40) be granted in part and denied in part; and that the Motion to Dismiss filed by Defendants Muhammad Naji, M.D., and Maria Leahy, P.A. (ECF No. 42) be denied. It is further recommended that Plaintiff not be provided leave to amend as it would be futile.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed until **November 28, 2014**, to file objections. Failure to timely file objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.

Dated:  November 10, 2014                         *s/ Cynthia Reed Eddy*
                                                  Cynthia Reed Eddy
                                                  United States Magistrate Judge


cc.     LEE STEWART
        GM-3632
        SCI Houtzdale
        P.O. Box 1000
        Houtzdale, PA 16698-1000
        (via U.S. First Class Mail)

        Yana L. Warshafsky
        Office of the Attorney General
        (via ECF electronic notification)

        J. Eric Barchiesi
        Law Offices of Bernard J. Kelly
        (via ECF electronic notification)

19

Arthur J. Murphy, Jr.
Murphy Taylor
(via ECF electronic notification)

Donald G. Lucidi
Murphy Taylor, LLC
(via ECF electronic notification)