IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEE STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:13-246 |
| | ) | |
| v. | ) | United States District Judge Kim R. |
| | ) | Gibson |
| PA DEPT. OF CORRECTIONS, et al., | ) | |
| | ) | United States Magistrate Judge |
| Defendants. | ) | Cynthia Reed Eddy |

## REPORT AND RECOMMENDATION

Cynthia Reed Eddy, United States Magistrate Judge.

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants Marvin Branton and Rich Clark's motion for summary judgment [ECF No. 87] be granted; that Defendant Muhammad Naji's motion for summary judgment [ECF No. 91] be granted; and that Defendants Mandy Corman and Maria Leahy's motion for summary judgment [ECF No. 95] be granted.

### II. REPORT

a. Background

Plaintiff, Lee Stewart, is an inmate who is currently, and at all times relevant to this lawsuit, confined in the custody of the Pennsylvania Department of Corrections ("DOC") in the State Correctional Facility ("SCI") at Houtzdale. Plaintiff filed his original Complaint on November 14, 2013. Subsequently, Plaintiff filed several Amended Complaints, the operative complaint being the Second Amended Complaint docketed on April 13, 2015. *See* SAC [ECF No. 76].

Plaintiff's basic claim is that he received inadequate medical care and was denied certain medical treatment in violation of his constitutional rights during his incarceration at SCI Houtzdale. The remaining defendants in this case are: Marvin Branton and Rich Clark, both registered nurses ("RN") at SCI Houtzdale, Muhammad Naji, M.D., the Medical Director at SCI-Houtzdale, and Maria Leahy and Mandy L. Corman, both Medical Physical Assistants ("PA-C") at SCI Houtzdale.[1]

This case stems from injuries Plaintiff sustained to his left foot on July 10, 2012 while playing basketball at SCI Houtzdale. On July 11, 2012, Plaintiff reported his injury and was seen and examined in the medical dispensary by RN Branton. He was provided with crutches, ice, Motrin and an ACE bandage. He was instructed to follow up with the Physician Assistant after an x-ray was taken. Dr. Naji approved the issuance of orders for an ACE bandage with tape, crutches, an ice bag, Motrin 400 mg., an x-ray of the left ankle, bottom bunk/bottom tier status until after a follow up examination and diet/crutch line for three days. Plaintiff alleges that he was "not given bottom bunk, bottom tier status until ten[](10) days after the fact, although ordered." Aff. of Lee Stewart [ECF No. 113-1] at 2.

On July 12, 2012, an x-ray was completed of Plaintiff's left ankle and foot. The films showed an acute transverse fracture at the base of his metatarsal with mild displacement, but a "wet-read" of the film by Physician Assistant Mandy Corman ("PA-C Corman") did not reveal any fracture. The medical records noted that Plaintiff was ambulating fine and that he turned in his crutches. Plaintiff disputes that he voluntarily turned in his crutches and maintains that he was forced to return his crutches. The treatment plan included the continued use of the ACE

---

[1] While Plaintiff originally brought suit against other Defendants, many of the Defendants were dismissed from this case at the motion to dismiss phase. *See* Order of 12/15/2014 [ECF No. 56]. The term Defendants as used in this recommendation indicates only those Defendants remaining in the case.

wrap and for Plaintiff to follow up in two weeks.  Plaintiff asserts that he was forced to "both walk and Work [sic] while my foot was fractured.  This lasted for at least Eight[](8) days[.]" Aff. of Lee Stewart [ECF No. 113-1] at 1.

On July 19, 2012, a week after the first series of x-rays were taken, a second series of x-rays were obtained.  The films showed unchanged images from the July 12, 2012 x-rays.  On that same day, Plaintiff saw Maria Leahy, PA-C ("PA-C Leahy") who noted that Plaintiff was limping, and his left foot was very tender over the fifth metatarsal area, although there was minimal swelling.  PA-C Leahy assessed through the x-ray reports that Plaintiff sustained a left fifth metatarsal fracture.  Plaintiff's left leg was placed in a short cast, and he was instructed to not bear weight on his left foot and to use crutches for six weeks.  Additionally, his housing was ordered to level/lower bunk and he was given diet/crutch line with tray service for six weeks.  An orthopedic consultation was ordered and Plaintiff was referred to University Orthopedics for care of his fracture.  An orthopedic consultation was completed on August 1, 2012.  The consultation recommended that the cast be removed in three weeks.

On August 3, 2012, Plaintiff presented to PA-C Leahy with complaints that the bottom of his crutch was worn out and that he needed pain medications.  His crutch was immediately replaced and a prescription for Tylenol was provided.

Plaintiff was next seen by PA-C Leahy on August 23, 2012 for the removal of his cast.  However, because Plaintiff missed an x-ray appointment prior to this appointment, his treatment plan was to wait to remove the cast until after the x-ray was performed.  The records indicate that if the film showed good callus formation present without pain at the fracture site, the cast would be discontinued.  If Plaintiff continued to have some pain, continued support with a cast shoe would be provided.  If there was no callus formation, the cast would be reapplied and Plaintiff

would be sent back for an orthopedic consultation.

Five days later, on August 28, 2012, Plaintiff presented to PA-C Leahy. His cast was removed and an x-ray was taken. The "wet read" of the x-ray film showed no callus formation. An orthopedic consultation was ordered and Plaintiff was ordered to continue using crutches for another month with continued bottom bunk/tier and diet/crutch line restrictions. Plaintiff was instructed to follow up in one week for reapplication of the cast.

On September 6, 2012, Plaintiff presented to PA-C Leahy who reapplied the cast to Plaintiff's left leg and Plaintiff was instructed to be non-weight bearing on his left leg and to use crutches. Plaintiff had another orthopedic consultation on September 17, 2012, and the medical records indicate that the x-rays taken at that time showed some bridging callus across the fracture site, or healing. Based upon the healing of his fracture, Plaintiff's treatment plan provided that Plaintiff could wear regular shoes, but he was to avoid running, jumping and cutting activities for six weeks. PA-C Leahy saw Plaintiff on September 19, 2012 and noted the plan recommended by the orthopedic consultation. Per the consultation, the cast was discontinued and Plaintiff was advised to wear his regular shoes. A hold was placed on his activities for another six weeks. The diet/crutch line order was allowed to expire at the end of October 2012.

On September 28, 2012, Plaintiff was seen by PA-C Corman on sick call. Plaintiff complained his foot fungus was getting worse and that he experienced ankle pain when he runs. The treatment plan consisted of a prescription for tolnaftate solution (Tinactin) and an order for an ankle sleeve for use when refereeing basketball. PA-C Leahy next saw Plaintiff on December 7, 2012 for complaints of rash at toes of both feet. At the appointment, he stated he was doing the daily exercises for his left foot and was running as well. Tinactin was prescribed for the rash.

On January 11, 2013, PA-C Leahy again examined Plaintiff for complaints of foot fungus

4

on both feet and pain in his left foot. Tenderness over the fracture site was noted during the examination. A new prescription for Tinactin was provided and an x-ray of his left foot was ordered. The x-ray was completed on January 15, 2013. The films revealed the old healed fracture with no acute fractures.

On February 8, 2013, PA-C Leahy saw Plaintiff for complaints of ankle pain and fungal problems. Plaintiff stated he was doing the exercises given to him for his ankle/foot, but upon examination, PA-C Leahy reported that "[e]ither he is providing very poor effort during exam or he is not doing the exercises as discussed [and the ankle is] weak and the weakness is causing the pain most likely not doing the exercises. The movement is not strong at the ankle." Statement of Material Fact ("SMF") [ECF No. 94] at ¶ 22. Plaintiff received a renewed prescription for Tinactin and a renewed physical therapy consultation was ordered.

The physical therapy consultation was completed on February 21, 2013. Based on the evaluation, the physical therapist recommended that the Plaintiff wear a left ankle lace-up support for work. Plaintiff was also instructed in ankle range of motion, strengthening and balance exercises. A follow up consult was recommended for two or three months post-consultation.

Dr. Naji examined Plaintiff on February 23, 2013. Plaintiff complained of pain in his left foot. Dr. Naji found Plaintiff had full range of motion in his left foot. The medical records indicated that Plaintiff had no significant pain to touch and no swelling. Dr. Naji also noted that Plaintiff's gait was normal. Dr. Naji assessed that Plaintiff's fracture of the left fifth metatarsal bone had healed completely and the treatment plan was that Plaintiff should take Tylenol for the pain as needed. Dr. Naji noted that the lace-up ankle support as per the physical therapist's recommendation may be beneficial and ordered the lace-up ankle support for two months.

Between March 13, 2013 and May 15, 2013, Plaintiff was seen regarding a fungal infection between the toes of his feet and anti-fungal medications were prescribed for this condition. On May 15, 2013, Plaintiff was seen on sick call by another physician assistant with complaints of left ankle pain. It was noted that Plaintiff had been able to work out daily but experiences pain after he is finished working out. An examination of his left ankle showed full range of motion with minimal pain, normal strength and equal pulses. Plaintiff was ordered back to physical therapy. A second physical therapy consultation was completed on June 11, 2013. Based on this evaluation, Plaintiff was instructed to continue with an aggressive strengthening program for his left ankle. Isometric exercises were added to the program. A third physical therapy consultation was completed on August 7, 2013. At that time, Plaintiff stated he had minimal pain in his left ankle. The examination revealed no edema in the left ankle, and that Plaintiff had full range of motion and normal strength. The plan was to discharge Plaintiff from physical therapy.

The records indicate that Plaintiff was seen by other health care providers at SCI-Houtzdale following August 7, 2013, but his complaints and problems primarily involved a fungal infection to the toes of both feet. Various anti-fungal medications were prescribed. Any sporadic complaints of foot pain were addressed by prescribing Naprosyn (Naproxen) for Plaintiff.

Plaintiff initiated the instant action on November 1, 2013 alleging various violations of his constitutional rights against myriad defendants. Following the motion to dismiss stage, two counts remain: (1) an Eighth Amendment Deliberate Indifference Claim against all of the Defendants; and (2) a professional liability claim under state law against Dr. Naji, PA-C Corman and PA-C Leahy. Each Defendant moves for summary judgment on the remaining claims

against them. Plaintiff has responded to Defendants' motions for summary judgment and the issues are ripe for review.

  b. <u>Standard of Review</u>

    1. *Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56*

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Live Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e. depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh

the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Batsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

      c. Discussion

While the Defendants filed separate motions for summary judgment, the arguments set forth therein are identical and will be discussed contemporaneously.

      *1. Eighth Amendment Deliberate Indifference Claim*

Here, Plaintiff maintains that Defendants were deliberately indifferent to a serious medical issue in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Plaintiff asserts his Eighth Amendment violation claim against Defendants under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

To state a claim under Section 1983, a plaintiff is required to show that an individual acting under color of state law violated the plaintiff's constitutional or statutory rights. *West v. Atkins*, 487 U.S. 42, 48 (1988).

In accordance with the Eighth Amendment's prohibition against cruel and unusual punishment, the government is obliged "to provide medical care for those whom it is punishing

by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Id.* at 104 (citation omitted). "[W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed . . . deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 104–05 (citations omitted).

A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id.*

The "deliberate indifference" a plaintiff must allege lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other" and is frequently equated with recklessness as that term is defined in criminal law. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). This standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979). Where a prisoner has received medical care and only the adequacy of the treatment is disputed, courts are often reluctant to second guess professional medical judgment. *See id.* However, deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. *See Durmer,* 991 F.2d at 64; *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical

9

care.").

An inmate's disagreement with the diagnosis or course of treatment does not establish "deliberate indifference" under the Eighth Amendment. *Estelle*, 429 U.S. at 106. For example, "whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures" does not violate the Eighth Amendment but rather sounds in medical malpractice. *Id*. at 107-08. The Court of Appeals for the Third Circuit has applied this finding in several cases. *Ruff v. Health Care Adm'r*, 441 F. App'x 843, 846 (3d Cir. 2011) (failure to order a rib x-ray did not constitute Eighth Amendment violation); *Everett v. Donate*, 397 F. App'x 744, 746 (3d Cir. 2010) (failure to order x-ray of knee was not deliberate indifference); *Dickerson v. SCI Graterford*, 453 F. App'x 134, 136 (3d Cir. 2011) (dismissing Eighth Amendment claim for prisoner's dissatisfaction of treatment for replacing, reducing and discontinuing medications for pain, seizure and hypertension, and attendant physician's decision that prisoner did not need surgery); *Montilla v. Prison Health Servs., Inc.*, 457 F. App'x 212, 214 (3d Cir. 2012) (decision by state prison medical officials to not perform hip-replacement surgery did not violate the Eighth Amendment).

In a similar case, the district court in *Robinson v. Shannon*, 2005 WL 2416116 (M.D. Pa. Sept. 30, 2005), dismissed a prisoner's Section 1983 claim for deliberate indifference where the prisoner fractured his ankle and was originally informed that it was sprained and did not receive a proper diagnosis for approximately two months. *Id*. at *1. In the interim, the prisoner was given a cane, ice pack, Motrin and an ACE bandage. *Id*. Additionally, his ankle was not immediately x-rayed after his injury, and was only x-rayed after his third sick call. *Id*. The court dismissed the prisoner's Eighth Amendment claims against the attending physician finding that

the prisoner's only complaint was with his diagnosis and disagreement with his treatment. *Id.* at *4. Likewise, the court dismissed the prisoner's Eighth Amendment claims against the other medical defendants, finding that he was examined and received treatment each time he requested and observed that "mere disagreements with the treatments ordered" did not support an inference of deliberate indifference. *Id.* at *6.

In the instant case, it is assumed that Plaintiff's symptoms and ailments constituted an objectively serious medical condition. However, the evidence unequivocally establishes that Defendants were not deliberately indifferent to Plaintiff's serious medical conditions. Plaintiff was seen by a nurse the day he reported his injury, was issued crutches, an ACE bandage with tape, an ice bag, and pain medications. Accommodations were also made to his bunking and dining status. The day after he reported his injury, he received x-rays and was seen by a physician assistant. Once the fracture was diagnosed, a short cast was set on Plaintiff's ankle and was referred to an orthopedic surgeon. The orthopedic surgeon recommended his course of treatment which was followed, and during the time he was in a hard cast, he was seen multiple times by PA-C Leahy. Plaintiff received additional x-rays, a lace up brace and physical therapy after he complained of pain. Any complaints of foot fungus were addressed by prescription anti-fungal medications. Overall, Plaintiff received no less than seventeen evaluations by medical personnel at SCI Houtzdale, two orthopedic consultations, three physical therapy consultations, numerous prescriptions for pain and anti-fungal medications, and five x-rays. There is no evidence that any Defendant failed to give him care when it was requested. The record evidence shows that Plaintiff received extensive medical care for his fracture and foot fungus and there is no evidence showing Defendants acted deliberately indifferent to his medical needs. *See Bennett v. Knauer*, 528 F.Supp.2d 571, 575-76 (E.D.Pa. 2007) (no deliberate indifference where prisoner

received nine x-rays, three orthopedic consultations, pain medication, physical therapy, daily dressing changes and additional services during his numerous sick call visits).

Plaintiff also argues that Defendants were deliberately indifferent to his medical needs by originally misdiagnosing his fracture as a sprain and taking away his crutches, forcing him to walk on his fractured foot for a period of approximately eight days. Plaintiff also argues that he should have received an MRI instead of an x-ray and his continued pain constitutes deliberate indifference. It is undisputed that Plaintiff received medical treatment as soon as he reported his injury, and any delay in receiving an initial x-ray does not rise to the level of deliberate indifference, as he was given an x-ray one day after reporting his injury. *See Jetter v. Beard*, 130 F. App'x 523, 526 (3d Cir. 2005). As for the initial misdiagnosis or delay in diagnosis of Plaintiff's fracture as a sprain, such a claim may give rise to a tort claim under state law but is not actionable under Section 1983. *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987) ("Medical malpractice may give rise to a tort claim in a state court but not necessarily to a constitutional claim."). Additionally, assuming that Plaintiff was forced to return his crutches prior to his fracture diagnosis, this is a mere disagreement with the treatment ordered by the medical staff and does not support a claim for deliberate indifference. *See Estelle,* 429 U.S. at 106; *Robinson,* 2005 WL 2416116, at *6, *supra*. The fact that the Plaintiff was given an x-ray instead of an MRI is also a disagreement with the course of his medical treatment and does not support a claim for deliberate indifference. *See Estelle*, 429 U.S. at 106; *Jetter v. Beard*, 130 F. App'x 523, 526 (3d Cir. 2005) (a prisoner's preference for a different course of treatment, and the denial of said treatment, does not constitute deliberate indifference under the Eighth Amendment). Finally, Plaintiff's argument that the pain he continues to experience is a cause of Defendants' negligent treatment is not the basis for an Eighth Amendment claim and sounds in a

state law tort claim. Considering all of the record evidence, there is no evidence that any Defendant intentionally refused to provide Plaintiff with medical care, delayed his medical treatment or denied Plaintiff his prescribed medical treatment.

Accordingly, it is respectfully recommended that Defendants be granted summary judgment on Plaintiff's Eighth Amendment claims.

> 2. *Professional Liability Claim under state law against Dr. Naji, PA-C Corman and PA-C Leahy*

A district court may decline to exercise supplemental jurisdiction over a state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because this Court recommends granting summary judgment in favor of Defendants for Plaintiff's remaining federal claim, it is also recommended that supplemental jurisdiction not be exercised over the state law medical malpractice claim. *Montilla v. Prison Health Servs.*, Inc., 457 F. App'x 212, 214 (3d Cir. 2012); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999).

    d. Conclusion

For the foregoing reasons, it is respectfully recommended that Defendants Marvin Branton and Rich Clark's motion for summary judgment [ECF No. 87] be granted; that Defendant Muhammad Naji's motion for summary judgment [ECF No. 91] be granted; and that Defendants Mandy Corman and Maria Leahy's motion for summary judgment [ECF No. 95] be granted.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed fourteen days after being served with this report and recommendation to file objections. Failure to timely file objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any

party opposing objections may file their objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.

Dated: February 9, 2016

By the Court,
s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: Honorable Kim R. Gibson
United States District Judge
*via electronic filing*

LEE STEWART
GM-3632
SCI Dallas
Drawer K, Follies Road
Dallas, PA 18612
PRO SE

*All counsel of record via electronic filing*